LEHIGH VALLEY COAL COMPANY, Respondent, vs. WEST DEPERE AGRICULTURAL WORKS, Appellant.

*March 12 — March 31, 1885.*

*Corporations: Bills and notes: Mortgages.*

1. If a corporation has power to make a note for any purpose, a note given by it will be valid in the hands of a *bona fide* holder for value, although the corporation might not have had power to make that particular note.
2. A corporation has power to mortgage its property in order to raise money to carry on its business.

APPEAL from the Circuit Court for *Brown* County.

Action to foreclose a mortgage alleged to have been executed by the defendant company to secure the payment of a note made by it for $10,000, dated May 15, 1882, payable to Rogers & Co. one year after date. The complaint alleges the assignment of the note and mortgage to the plaintiff, for value, on or about February 8, 1883.

The answer alleges that the mortgage was executed without the authority of the defendant or of its board of di-

rectors; that the defendant never received any consideration therefor and has had no advantage thereof; and that said execution was *ultra vires*.

The facts will sufficiently appear from the opinion. There was a judgment in favor of the plaintiff, and the defendant appealed.

For the appellant the cause was submitted on the brief of *Finches, Lynde & Miller*, attorneys, and *B. K. Miller, Jr.*, of counsel.

For the respondent there was a brief by *Vroman & Sale*, and oral argument by *Mr. Vroman*. They argued, *inter alia*, that it is within the general power of corporations in this state to execute notes and mortgages. *Rockwell v. Elkhorn Bank*, 13 Wis. 653; *Ballston Spa Bank v. Marine Bank*, 16 id. 120; secs. 1675, 1775, R. S. Although in respect to a particular instrument it may have exceeded its authority, the purchaser thereof for value in good faith will be protected. *Bank of Genesee v. Patchin Bank*, 13 N. Y. 309; 19 id., 312; *Farmers' & M. Bank v. B. & D. Bank*, 16 id. 125; *Bissell v. M. S. & N. I. R. Cos.* 22 id. 289; *Mechanics' Banking Ass'n v. N. Y. & S. W. L. Co.* 35 id. 505; *Stoney v. Am. L. Ins. Co.* 11 Paige, 635; *Griswold v. Haven*, 25 N. Y. 595; *Morford v. Farmers' Bank*, 26 Barb. 568; *Bridgeport City Bank v. Empire S. D. Co.* 30 id. 421; *Robb v. Ross Co. Bank*, 41 id. 586; *Parish v. Wheeler*, 22 N. Y. 494; *Monument Nat. Bank v. Globe Works*, 101 Mass. 57; *Salisbury Mills v. Townsend*, 109 id. 115; *Davis v. O. C. R. Co.* 131 id. 258; *Miners' Ditch Co. v. Zellerbach*, 37 Cal. 586; Field on Corp. sec. 270; Bigelow on Estoppel, 466; Edwards on Bills, sec. 59; Angell & A. on Corp. sec. 268. The execution of the instruments being within the apparent scope of the authority of the president and secretary, the defendant is estopped to deny their authority in this particular case; and the plaintiff has the right to assume that everything has been done which was necessary to the

due and lawful execution of the instruments. *Comm'rs of Knox Co. v. Aspinwall*, 21 How. 539; *Bissell v. Jeffersonville*, 24 id. 287; *Mercer Co. v. Hacket*, 1 Wall. 83; *Meyer v. Muscatine*, id. 385; *Gelpcke v. Dubuque*, id. 175, 203; *Van Hostrup v. Madison*, id. 291; *Lexington v. Butler*, 14 id. 283; *Merchants' Bank v. State Bank*, 10 id. 604; *Illinois v. Delafield*, 8 Paige, 527; *Gano v. C. & N. W. R. Co.* 60 Wis. 12.

COLE, C. J. It cannot well be denied on the proofs that the note and mortgage in suit were duly executed by the president and secretary of the defendant corporation, and were delivered to Rogers & Co. to secure advances made by that firm on the credit of these securities. Under the by-laws of the defendant, the president was authorized to sign, and the secretary to countersign, such instruments. The mortgage is under the seal of the corporation, and it is elementary law that the presumption is that the seal was affixed by proper authority. It is an established fact that these instruments were transferred by Rogers & Co. before maturity for value, and that the plaintiff must be deemed a *bona fide* holder of them. The learned counsel for the defendant insists that the evidence shows that these obligations were given to raise money which was never received by the defendant, and from which it absolutely received no benefit. If this were so, it would constitute no defense, since the securities have passed into the hands of a *bona fide* holder without notice, which has paid a valuable consideration for them. For, under our decisions, a promissory note, though secured by a mortgage, is treated as commercial paper.

But the position of counsel that these obligations were given as collateral security for the debt of the Fox River Iron Company to Rogers & Co., and that the defendant did not have any benefit from the advances made upon

them, is, in our view, entirely untenable. It appears that the defendant corporation was organized subsequent to the organization of the Iron Company. Its stockholders and directors were Blanchard, Arnold, and one Workman. The stockholders and directors of the Iron Company were Blanchard and Arnold. One Kellogg was the hired secretary of each corporation, but owned no stock. The financial manager and president of both corporations was Blanchard. The evidence shows that he had the general charge of the business of both corporations and the management of the finances of each. During the period of five years there was no change of the officers and directors of the corporation — the officers holding over from year to year. It appears that from its organization up to October, 1883, the stockholders held no meeting whatever, and the board of directors but two — its business and finances being principally controlled by the president. It seems for many years the products of the Iron Company were sold exclusively to Rogers & Co., of Chicago, who made cash advances on them.

The learned circuit court found as facts — and this finding is abundantly warranted by the evidence — that it was the long-continued practice of both the Iron Company and the defendant to make out and furnish to Mr. Blanchard, the president and financial manager of both, as we have said, a monthly statement of the amount of money required by each for the ensuing month; that Blanchard then obtained the required amounts from Rogers & Co., and the same were charged on the books of Rogers & Co. to the Iron Company. But the money which was thus advanced was paid out on the current indebtedness and expenses of both corporations as needed; the amounts so paid for the defendant being charged against it on the books of the Iron Company. At the time of the execution of the note and mortgage in suit the indebtedness of the Iron Company to Rogers &

Co. on account of advances was about $40,000, and the indebtedness of the defendant to the Iron Company for money and material furnished it was $64,000. In May, 1882, when application was made by Blanchard to Rogers & Co. for an advance of $10,000, Rogers & Co. refused to make it unless additional securities were furnished. Thereupon this note and mortgage were executed and delivered to that firm, which made an advance of $10,000 on the faith and credit of these securities.

If this action were between the original parties to the transaction, it is not readily perceived upon what ground a foreclosure of the mortgage could be defeated, upon the facts above stated, which we consider established by the evidence. True, it is said the defendant had no authority to give a note and mortgage on its property as surety for the advance made by Rogers & Co. to the Iron Company. But is it not perfectly clear that this advance of $10,000 was used in carrying on its business, and that it had the benefit of that loan as fully as did the Iron Company? It seems to us idle to claim, upon the facts, that the defendant was a mere surety for the Iron Company in a business about which it had no interest; for the money seems to have been expended for the benefit alike of both corporations in conducting the business in which each was engaged; and while the whole indebtedness to Rogers & Co., at the time of giving these securities, was in form due from the Iron Company, yet really it was the debt of both corporations. Surely this $10,000 advance, or a portion of it, was used for the benefit of the defendant, as all the proof shows.

But it is said that neither the stockholders nor directors of the defendant, at any formal meeting, authorized the giving of these securities. But the defendant is in no position to raise even that objection. Its stockholders held no meetings; its directors held but two. Its only stockholders were engaged as officers attending to different

branches of its affairs, and were certainly chargeable with notice of the way the corporate business was carried on. They knew, or should have known, what their president was doing.  They permitted him for years to raise money to carry on the business of which they had charge, and shall they be heard now to object that the president and secretary exceeded their authority when they executed the securities in question?  It seems to us they are estopped from making any such defense even as against Rogers & Co.  Be that as it may, the law is perfectly well settled " that if the corporation have the power to make or take a note for any purpose, a note originally given by or to them would be valid in the hands of a *bona fide* holder, or their *bona fide* indorsee without notice, though the corporation might not have had the power to make or take the particular note." Angell & A. on Corp. sec. 268.

It does not admit of discussion, as it seems to us, that the defendant corporation had power to give a mortgage upon its property in order to raise money to carry on its business.  If any authorities are needed to support such an elementary proposition of law they will be found on the brief of plaintiff's counsel.

Our conclusion upon the evidence is that the note and mortgage in question are perfectly valid, and that the judgment of the circuit court must be affirmed.

*By the Court.*— It is so ordered.